UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| THERESA M. VINAL, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 1:10-cv-505-JAW |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on four bases: that the administrative law judge erred in (i) failing to find her fibromyalgia a severe impairment, (ii) failing to give controlling weight to the residual functional capacity ("RFC") opinion of treating physician Alan Ross, M.D., (iii) making a flawed credibility assessment, and (iv) arriving at an RFC determination unsupported by substantial evidence, undermining the relevance of the vocational expert's testimony that a person with that RFC could perform certain jobs existing in significant numbers in the national economy. *See* Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 4-13. I recommend that the decision of the commissioner be affirmed.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of an affective disorder, degenerative disc disease, and migraine headaches, Finding 3, Record at 13; that she retained the RFC to lift 20 pounds occasionally and 10 pounds frequently, sit for about six hours out of an eight-hour workday, stand and/or walk for about three to four hours out of an eight-hour workday, required a sit/stand option at her discretion, could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, could never climb ladders, ramps, or scaffolds, had to avoid exposure to hazards, was capable of carrying out two- to three-step instructions over two-hour blocks with appropriate breaks throughout an eight-hour workday, and could interact appropriately with co-workers and supervisors, Finding 5, *id.* at 14; that, considering her age (42 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 18; and that she, therefore, was not disabled from November 1, 2007, her alleged disability onset date, through July 2, 2010, the date of the decision, Finding 11, *id.* at 19.[2] The Decision Review Board declined to disturb the decision, *see id.* at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[2] The plaintiff is insured for purposes of SSD benefits through March 31, 2012. *See* Finding 1, Record at 12.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 4 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 4 of the sequential evaluation process, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

### A. Failure To Find Severe Impairment of Fibromyalgia

The plaintiff correctly observes that the administrative law judge erred in failing even to consider whether she had a severe impairment of fibromyalgia despite the existence of record evidence that she did. *See id*. at 4-5; Record at 13.[3] Nonetheless, the error is harmless. The administrative law judge adopted the physical RFC opinion of Disability Determination Services ("DDS") nonexamining consultant Richard T. Chamberlin, M.D., *compare* Finding 5, Record at 14 *with id*. at 564-72, who accepted the fibromyalgia diagnosis made by treating physician Dr. Ross and disagreed with DDS examining consultant Bruce Trembly, M.D., that the plaintiff's symptoms were attributable to neurosis rather than fibromyalgia, *see id*. at 569-70; *see also id*. at 335. The administrative law judge's RFC thus reflects limitations that Dr. Chamberlin found attributable to fibromyalgia.[4]

---

[3] "Fibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Johnson v. Astrue*, 597 F.3d 409, 410 (1st Cir. 2009) (citation and internal punctuation omitted). "Further, the musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities." *Id*. (citation and internal punctuation omitted). "The American College of Rheumatology nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites." *Id*. (citation and internal punctuation omitted).

[4] At oral argument, the plaintiff's counsel contended that the adoption of the Chamberlin opinion did not render the
*(continued on next page)*

## B.  Failure To Give Controlling Weight to Ross RFC Opinion

Dr. Ross submitted an RFC opinion dated April 28, 2010, in which he indicated, *inter alia*, that as a result of the plaintiff's C4-5 fusion in 2000, migraine headaches, fibromyalgia, opioid dependence, and lumbar spine degeneration as shown in a 2008 MRI, she was able to lift less than 10 pounds, albeit never frequently, stand and/or walk for a maximum of one hour in an eight-hour workday in 15-minute durations, sit for a maximum of one hour in an eight-hour workday, and was limited in the use of both her upper and lower extremities.  *See id*. at 587-88.  In a supplement to that opinion also dated April 28, 2010, he stated that the plaintiff had constant severe widespread pain, including neck, upper back, lower back, hips, wrists, knees, and feet, and that she could work a maximum of one to two hours a day, four days a week.  *See id*. at 591.  He indicated that the plaintiff's experience of pain or other symptoms was constantly severe enough to interfere with the attention and concentration needed to perform even simple work tasks.  *See id*.

The administrative law judge found the Ross opinion unpersuasive on grounds that it was "conclusory and inconsistent with other significant evidence of record" and that Dr. Ross "described virtually no clinical findings to support the extreme limitations he assessed, and he indicated that the [plaintiff's] subjective complaints of pain were the primary source of her limitations."  *Id*. at 16 (citation omitted).

---

error harmless because (i) Dr. Chamberlin saw only Dr. Ross's initial evaluation note and not his subsequent notes or other subsequent medical evidence that, in the plaintiff's counsel's view, made clearer the severity of the fibromyalgia symptoms, and (ii) the effects of the error spilled into subsequent steps in the sequential evaluation process, likely coloring the administrative law judge's consideration of both the Ross RFC opinion and the plaintiff's credibility by causing him to be more prone to dismiss her complaints of pain, which is the major symptom of fibromyalgia.  Nonetheless, as discussed below, Thomas Tarnay, M.D., a medical expert who testified at the plaintiff's hearing and had the benefit of review of the full medical record, considered Dr. Chamberlin's findings appropriate.  *See* Record at 51-52.  In addition, as discussed below, the administrative law judge made supportable RFC and credibility determinations.  I am unpersuaded that a finding of a severe fibromyalgia impairment would have made a material difference in his analyses of those matters.

5

On appeal, the Decision Review Board affirmed that finding, elaborating:

> Dr. Ross's opinion of [the plaintiff's] functional capacities is contradicted by his clinical findings. In a physical examination performed on January 26, 2009, Dr. Ross noted that [the plaintiff] exhibited 'elaborate pain behavior including moving slowly, groaning, flinching, and gasping during the physical exam.' He observed that [the plaintiff] walked with short step length, shuffling steps, and holding [her] body stiffly. He noted that [her] strength was functional for climbing on and off the exam table, which [she] did smoothly, if slowly. He found normal muscle tone in [her] lower extremities. He noted that [her] straight leg-raising test was negative with distraction. He observed that [she] reported pain in the 'whole left leg' as far as the ankle at 30 degrees during the straight leg-raising test. The Decision Review Board finds that these clinical observations are inconsistent with his opinion of the functional limitations [she has] due to [her] lumbar disc disease. The Decision Review Board further notes that the decision addresses some of these clinical findings. Because Dr. Ross's opinions are inconsistent with his clinical findings, observations, the other objective medical evidence, and his clinical findings and observations do not support his opinions, the Decision Review Board finds that his opinions are not entitled to controlling weight pursuant to 20 CFR §§ 404.1527, 416.927, and Social Security Rulings (SSRs) 96-2p and 96-5p. Additionally, the Decision Review Board notes that the Administrative Law Judge requested that two medical experts testify at the hearing. Drs. Tingley and Tarnay offered their opinions after reviewing the records and [the plaintiff's] testimony. Because these medical experts reviewed the entire record and were familiar with the Agency's rules and regulations, the Administrative Law Judge adequately considered their expert opinions in evaluating other opinions of record.

*Id*. at 1-2 (citations omitted).[5]

The commissioner's regulations promise that controlling weight will be given to the opinion of a treatment provider "[i]f [the commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record[.]" 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). An administrative law judge must supply "good reasons" for discounting the opinion of a treating source. *See id.* (commissioner must "always give good reasons in [his] notice of determination

---

[5] The psychological and medical experts present at the plaintiff's hearing were Charles O. Tingley, Ph.D., and Thomas Tarnay, M.D. *See* Record at 10.

6

or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

The plaintiff faults the Decision Review Board for discussing only the notes of her initial visit with Dr. Ross on January 26, 2009, and ignoring notes from subsequent visits, and for failing to mention other significant findings during the January 26, 2009, visit, including significant limitations in range of motion and positive findings with respect to all 18 trigger points associated with fibromyalgia. *See* Statement of Errors at 6-7. She adds that if Dr. Ross had initial doubt as to whether there was symptom magnification, he resolved it in her favor by June 19, 2009, when he reported that he supported her disability request. *See id.* at 7; Record at 601-02. She disputes the finding that Dr. Ross's opinion is inconsistent with other evidence of record, arguing that it is consistent with:

1. Treatment notes of Charles Sullivan, D.O., whom the plaintiff visited beginning on February 4, 2009, for cranial osteopathy treatments and who noted on intake and thereafter that she moved with obvious difficulty in changing positions, had muscle dysfunction, had positive trigger points consistent with fibromyalgia, and could not work, *see* Statement of Errors at 7-8; *see also, e.g.*, Record at 561-63;

7

2. Significant limitations on range of motion found by Dr. Trembly, the DDS consulting examiner, who observed her movements after she left his office and reported that she continued to have a slow, deliberate gait and moved carefully when getting into her vehicle. *See* Statement of Errors at 8; Record at 334-35;

3. The finding of DDS examining psychologist Kevin L. Polk, Ph.D., that the plaintiff suffered from depression and that her attention and concentration likely would be impaired both by the pain medications that she was taking and by her depression. *See* Statement of Errors at 9; Record at 332;

4. The testimony of Dr. Tingley at hearing that the plaintiff had a moderate impairment in maintaining concentration, persistence, and pace, even without taking into consideration any impact from the effects of pain on her ability to maintain focus and concentration in a work setting, a subject matter that Dr. Tingley was unable to address. *See* Statement of Errors at 9; Record at 55-56; and

5. Equivocal testimony at hearing by Dr. Tarnay as to whether the limitations imposed by Dr. Ross (Exhibit 22F) were more appropriate than those imposed by two DDS nonexamining consultants, Dr. Chamberlin (Exhibit 20F) and Lawrence P. Johnson, M.D. (Exhibit 15F). *See* Statement of Errors at 9; Record at 51-52, 351-59, 564-72, 587-92. In any event, the plaintiff argues, the Chamberlin and Johnson RFC opinions became outdated upon submission of later evidence indicating lack of improvement despite trials of different treatments. *See* Statement of Errors at 9-10; *see also, e.g.*, Record at 596-97, 601-02, 609, 612, 663.

I conclude that the administrative law judge and the Decision Review Board supplied the requisite good reasons for declining to accord controlling weight to Dr. Ross's opinions concerning the nature and severity of the plaintiff's impairments.

First, despite Dr. Ross's findings on physical examination on January 26, 2009, of decreased range of motion, tenderness, and tightness, *see* Record at 559, the Decision Review Board supportably found that he made objective findings and observations indicative of symptom magnification, including that the plaintiff demonstrated "elaborate pain behavior[,]" had a positive SLR, or straight leg raising, test, for example reporting increased pain in the whole left leg as far as the ankle, but the SLR test was negative with distraction, and demonstrated sufficient functional strength to climb on and off the exam table smoothly, if slowly, *see id*. Although Dr. Ross ultimately supported the plaintiff's disability application, *see id.* at 602, the Decision Review Board committed no error in placing great emphasis on these observations made during his initial examination.[6]

In addition, both the administrative law judge and the Decision Review Board supportably deemed the Ross opinion inconsistent with other medical evidence of record. Most

---

[6] As the plaintiff observes, *see* Statement of Errors at 5, in *Johnson*, the First Circuit held that it is error for an administrative law judge to discount a fibromyalgia diagnosis on the basis that it is supported by a claimant's subjective allegations, given that the presence of trigger points is the only objective sign of fibromyalgia, *see Johnson*, 597 F.3d at 412. The First Circuit further observed that once the administrative law judge accepted the diagnosis of fibromyalgia, she "had no choice but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptoms or symptoms." *Id.* at 414 (citation, internal punctuation, and emphasis omitted). "The primary symptom of fibromyalgia, of course, is chronic widespread pain[.]" *Id.* However, in *Johnson*, the commissioner pointed to no instances in which any of the claimant's physicians ever discredited her complaints of such pain. *See id*. Here, Dr. Ross, the very physician who diagnosed the plaintiff's fibromyalgia, made objective findings and observations calling into question the extent of the claimed pain. *See* Record at 559. In addition, although, in *Johnson*, fibromyalgia was the claimant's only physical impairment, *see Johnson*, 597 F.3d at 410, the plaintiff in this case was found to have degenerative disc disease and migraine headaches, *see* Finding 3, Record at 13. The plaintiff does not argue that comments regarding a lack of objective findings and a reliance on subjective statements are inappropriate with respect to those diagnoses.

notably, at the plaintiff's hearing, the following colloquy between the administrative law judge and Dr. Tarnay ensued:

> Q   Considered in full, does the claimant, does the eminence of the objective, the radiological studies includ[ing] co-findings support the degree of impairment alleged by the claimant?
>
> A.   That's a hard call.  There are two studies, 15F [the Johnson RFC opinion] and 20F [the Chamberlin RFC opinion] and one 22F [the Ross RFC opinion], from what I read and what I've put together, it seems that the limitations on 15F and 20F seem more appropriate with the findings than 22F.  But that's a tough call.

*Id*. at 51-52.  Although Dr. Tarnay deemed this a "tough call," he did not equivocate.  He found the Johnson and Chamberlin RFC opinions more appropriate than that of Dr. Ross.  To the extent that the Johnson and Chamberlin RFC opinions otherwise might have been outdated or superseded, their endorsement by Dr. Tarnay, who had reviewed the full record, remedied any such defect.

### C.  Assertedly Flawed Credibility Finding

At hearing, the plaintiff testified that her pain, which radiated between her shoulders and into her neck, lower back, and right hip, was constant, took the form of a stabbing, burning, and/or tingling sensation, and varied in intensity, but was always so severe as to preclude competitive employment.  *See id*. at 34-36.

The administrative law judge found the plaintiff's testimony, as to the severity of her symptoms and resulting limitations, not credible to the extent alleged, reasoning that it was inconsistent with her own reported activities.  *See id*. at 14.  He stated:

> The [plaintiff] has three children, ages twelve, thirteen and seventeen, that she helps care for.  She testified that she drove a car three times per week, and that she was able to travel to the store and to medical appointments.  She also testified that she played board games and watched television with her children, and that she could use a computer.  She also testified that she socialized with her sister,

> friend and neighbor. The [plaintiff's] allegations are also inconsistent with the medical evidence of record, discussed in greater detail below.

*Id*. at 14-15. On appeal, with respect to credibility, the Decision Review Board added:

> [T]he records reflect that [the plaintiff] demonstrated a negative straight leg test when distracted. [The plaintiff] reported pain not consistent with a dermatomal pattern. [The plaintiff] demonstrated functional strength to get on and off the examining table. The Administrative Law Judge addressed these and other findings along with evidence that supported your allegations. The Decision Review Board finds that there is substantial evidence to support the credibility determination in the decision.

*Id*. at 2.

The plaintiff asserts that her described activities of daily living are not inconsistent either with her allegations or with Dr. Ross's RFC opinion, and that the administrative law judge's reliance on them to discount her credibility is flawed for the reasons set forth in *Johnson*. *See* Statement of Errors at 10-11.

In *Johnson*, the First Circuit held that the administrative law judge's decision to discredit the claimant was not supported by substantial evidence in circumstances in which, to the extent that the administrative law judge relied on the claimant's activities of daily living, (i) the claimant's ability to engage in light housework, meal preparation, and driving short distances was not necessarily inconsistent with her treating source's opinion that she could sit for four hours in an eight-hour day and walk and stand for one hour each during the same time period, and (ii) once the administrative law judge accepted the diagnosis of fibromyalgia, she necessarily had to conclude that the claimant had chronic widespread pain, at least in circumstances in which the commissioner pointed to no instances in which her treating physicians ever discredited her complaints of such pain. *See Johnson*, 597 F.3d at 413-14.

As counsel for the commissioner pointed out at oral argument, *Johnson* is distinguishable. Even assuming *arguendo* that the administrative law judge erroneously viewed

the cited activities of daily living as inconsistent with the plaintiff's allegations, he relied not only on those activities but also on the asserted inconsistency between the plaintiff's allegations and the medical evidence of record. The plaintiff's allegations indeed were inconsistent with the restrictions assessed by Drs. Johnson and Chamberlin and endorsed at hearing by Dr. Tarnay.

In these circumstances, deference is due the credibility finding. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

### D. Challenge to Findings at Steps 4 and 5

With one exception, the plaintiff's challenge to the administrative law judge's Step 4 and 5 findings hinges on the success of her first three points of error, *see* Statement of Errors at 12-13, which I have concluded do not warrant reversal and remand.

The plaintiff also faults the administrative law judge for failing to include, in his hypothetical question to a vocational expert present at her hearing, deficits in attention and concentration related to pain, depression, and the effects of her pain medication, as found by Drs. Ross, Polk, and Tingley. *See id.* at 12.

I find no error. The administrative law judge adopted Dr. Tingley's opinion that the plaintiff suffered from a severe mental impairment of depression and included in his hypothetical question to the vocational expert the very limitation that Dr. Tingley testified resulted from that impairment in combination with the effects of the plaintiff's pain medication, a limitation to

three-step instructions. *See id*. at 54-56, 58-59.[7] Dr. Tingley had the benefit of review of the opinion of Dr. Polk, who found the plaintiff capable of doing work-related activities such as understanding, carrying out, and remembering instructions, although it was likely that her attention and concentration would be impaired by the pain medications she was taking, as well as by her depressed mood. *See id*. at 332.

Neither Dr. Tingley nor Dr. Polk expressed any opinion as to whether the plaintiff's *pain* would affect her attention and concentration. *See, e.g., id*. at 56. While Dr. Ross indicated that the plaintiff's experience of pain or other symptoms was constantly severe enough to interfere with the attention and concentration needed to perform even simple work tasks, *see id*. at 591, Drs. Johnson and Chamberlin made no such findings, *see id*. at 351-59, 564-72. As discussed above, Dr. Tarnay endorsed the physical RFC opinions of Drs. Johnson and Chamberlin over that of Dr. Ross, and the administrative law judge supportably resolved conflicts in the evidence by crediting the Tarnay/Johnson/Chamberlin findings over those of Dr. Ross.

The administrative law judge's RFC finding was supported by substantial evidence. Accordingly, he committed no error in relying, at Step 5, on vocational expert testimony predicated on that RFC.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

---

[7] The administrative law judge explicitly declined to adopt the only other mental RFC assessments of record, by nonexamining DDS consultants Scott W. Hoch, Ph.D. (Exhibit 14F), and Lewis F. Lester, Ph.D. (Exhibit 21F), both of whom found that the plaintiff did not have a severe mental impairment. *See* Record at 13 n.1, 337, 573.

*which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge